Johnston, Chancellor.
The proof satisfies me that there has been no obstruction in the way of the defendant’s taking possession ; on the contrary, there was, and is, a perfect readiness and preparation to let her into possession. So *far there is no reason against enforcing the alleged contract.
Again, I do not think the defendant can be released from it, if otherwise binding, merely because when she made her offer, she expected to receive an answer earlier than she did. Her letter of proposal to the plaintiff’s agent fixed no definite time within which the answer was to be given, nor did it contain any thing calculated to apprise him that she labored under any misapprehension as to the existing run of the mail, so as to notify him that he should not consider the proposal open to his acceptance, unless he could make that acceptance known to her by a given day, Kennedy v. Lee, 3 Meriv. 447-8. She simply required “ an immediate answer,” so as to put her at liberty, if her offer should be refused, to purchase elsewhere. If “ an immediate answer ” was given, by which the plaintiff was bound, so that she could not sell to another, the defendant ought also to be bound to complete the purchase. The answer was communicated by the return of post; which was as early as it could be.
The only difficulty is, this: was there a contract ? Can one be made out, by putting together the defendant’s letter, of the 1st, and the answer to it, of the 4th of March, 1831? 2 Hov.’s Sup to Ves. jr. 119. Do those letters set forth the subject and terms of a contract, that if put into *113 tbe hands of a maní of business, he could, by a sound legal interpretation of them, without further instruction, reduce the contract to form? Kennedy v. Lee, 3 Meriv. 451. Do they show a treaty, with reference to which mutual assent can be clearly demonstrated; or a proposal met by that sort of acceptance which makes it no longer the act of one, but of both parties ? — so closed as to have no essential terms to be afterwards settled? Stratford v. Bosworth, 2 Ves. & B. 345; and note 2 to Brodie v. St. Paul, 1 Ves. 326. Does the answer, properly understood, amount to an unqualified, single acceptance of the terms proposed, without a .Tariation of them, or the introduction of any new or different term, or terms of a different effect? Holland v. Eyre, 2 Sim. & Stu. 195.
The subject and terms of contract are explicitly set out in the defendant’s letter of the 1st of March: the settled plantation, containing eight hundred and sixty-nine acres — $6000 in cash, and $2000 in January, 1832. The terms are as distinctly set *out and accepted in the answer of the plaintiff’s agent, if you exclude from that answer the expression about interest from the date on the $2000. The whole case turns on that expression.
The defendant had not, certainly, proposed that the $2000 should bear interest from the date, but only to pay the $2000 in January, 1832; and .would not have become chargeable with interest on that sum, until that time' had come round. With what view, then, did the plaintiff’s agent, after recapitulating and accepting her proposal, mention this subject of interest ? Did he intend to constitute the payment of interest from the date on the $2000, part of the terms accepted by him? Or did lie mention it merely in reference to the formal execution of the contract, without intending to shake or effect the contract by it ? Did he intend to accept the terms proposed, whatever might be their legal effect, and to suggest, apart from these terms so accepted, that, notwithstanding he intended to stick by the contract, yet according to his view of its legal effect, the sum mentioned would bear interest from the date ? Or did he again intend, whilst on the one hand he distinctly accepted the terms proposed, to suggest on the other without setting the contract again afloat, that in fairness the defendant ought to pay interest on the $2000?
If he intended to incorporate the matter of .the interest with his acceptance, in such manner as that his principal could not be compelled to convey upon the foot of his acceptance, unless the interest should be paid — if this be the proper construction of his letter, taken all together —then he has accepted one set of terms, when another was proposed ; and not having accepted the terms proposed, the defendant is not bound. The sum which, by her offer, she would be bound for, on the last day of January, 1832, (for she would be entitled to the whole month to make the payment,) would be $2000. The sum accepted for, ($2000, with interest from the date of the correspondence,) would he $2,128. If her undertaking, in the agent’s acceptation, were reduced to the *form of a bond, she would, if she failed to. take it up at maturity, be liable for interest on $2,128 from the last of January, 1832 ; whereas, by her own offer, she would, in case of failure to pay, only be liable for interest on $2000, from the last of January,' 1832. If this be the interpretation of the agent’s letter,, there is no ground for the bill. Gibbs v. *114 Chrisholme, 2 N. & M’C. 28. The plaintiff cannot enforce payment of the $2,128, because it was never proposed; nor could the defendant compel execution of titles, because she has never bound herself to pay $2,128, in consideration of which alone has the plaintiff’s agent agreed to convey.
This was the interpretation I at first put on the letter of the agent. I felt inclined towards it for a considerable time; but I fear I was too much disposed to entertain it, by my conviction, that this is a hard case. Still, although I have, upon reflection, adopted a different construction, my first view comes and goes on my mind : and I shall feel real pleasure, if the Supreme Court should reverse my final decision.
The agreement itself, its formal execution, its legal effect, and suggestions of additions to it, are all distinct things.
The plaintiff’s agent, in the title under consideration, first of all takes up the proposals made to him, distinctly recapitulates them, and then distinctly accepts them. This over, and (as I conclude) considering the bargain closed, he, as a separate matter, takes up the subject of its formal execution; and here, casually as it would seem, and not as a substantive part of the agreement, mentions the interest. This mention of interest, I am constrained to think, does not touch the terms already accepted by him. It goes no more to affect the terms distinctly offered, and distinctly accepted, than if it had been made in another letter; of a date subsequent to that containing the acceptance. And if the agent had closed his letter of the 4th March with a bare acceptance, and had, the next day, written concerning giving possession, taking bonds, the interest, &e., no one will contend that the contract would not have ' stood.
This must be the decision, if we regard the agent, in speaking of interest, as asking directions respecting the formal execution of the contract.
*Again, I think the same decision must be made, if we regard the agent, in mentioning the interest, as intending to confine himself to the legal effect of the terms he had already accepted. To put the contract by, as it were, he takes the terms up, one by one, and assents to them all. Having bound his principal to these terms, whatever their legal effect might be — having bound her to take the contract “ for better for worse,” I do not feel at liberty, upon light grounds, to conclude that he meant, by mentioning the interest, to undo all that he had done: and if he meant to speak merely to the legal effect of what he had done, and gave a wrong opinion, that does not alter or undo what he had done. Underhill v. Horwood, 10 Ves. 209, 228. The opinion is wrong, on the contrary, merely because the act done is too valid to be done away or altered. Now, to test whether a misconception of the legal effect of this contract entertained by one of the parties at the time of making it, is to vitiate it, let us suppose the bill filed against the party who entered into the contract laboring under the misconception. W ould that party be exonerated from his distinct explicit undertaking, merely on the ground of a mistake in law ? Such a doctrine has been once hinted in this Court, and the hint was borrowed from one of the highest sources in the Union. Lownds v. Chisholme, 2 M’C. Ch. 463; Hunt v. Rousmanier, 8 Wheat. 215-16. It is .not, however, a necessary point in the case. I am not *115 prepared to acknowledge suck a doctrine. Even in criminal cases, every man is held bound to know the law: and if guilty of violating it, will be punished, although he does not know it — even if the punishment extends to life. Lyon v. Richmond, 2 John. Ch. 51, 60. Society cannot go on, if this policy be relaxed. How then, in matters of meurn and fomm, in this Court, or any other, can any one claim exemption for the legal consequences of his acts ?
Elliott, for the defendant,
argued that before the Court would enforce a contract by letter, it must be shown from the letters, and not by evidence aliunde, that an agreement in all its parts has been concluded. The letters must be taken together, and considered as constituting a contract complete in itself, and not requiring further terms or explanations. Construe the two letters with each other, and there appears to be something requiring further explanation or stipulation of -some sort. The letter of acceptance sets up a new and distinct term from any contained in the proposal, and therefore sets the contract afloat. He cited and commented on Bunch u-Blisby, 2 Madd. 19 ; Stratford v. Bosworth, 2 Yes. & Beames, 314; 3 Mer. 449; 2 Sim. & Stewart, 194.
Pettigru, contra,
insisted that the letter of the defendant contained the terms of a go‘od contract, and it was only necessary that it should have been accepted, to make it obligatory on both parties. This was done in so many words, by the letter in reply. The objection is taken from the words in parenthesis, in regard to the interest: they are in a subsequent part of the letter, after the acceptance, *and form no part of the agreement itself. They were used in relation to the execution of the agreement already assented to, and as explanatory of its meaning, or as giving a legal construction to the contract. 3 Ves. 265 ; 5 Vin. Ab. 521; Sugden’s Law of Vendors, 59, 60 ; 9 Ves. 351; Kennedy v. Lee, 3 Mer. 451.
*115 Once more : the expression about interest, may be regarded as a suggestion that although the terms proposed were distinctly accepted, and would be abided by, yet, in fairness, interest should be added. Now, if A. offer B. in writing, $500 for his land, payable in twelve months, and B. replies in writing, “I accept your offer, but, nevertheless, when we come to draw your bond, I think you should make it bear interest from the datewould this suggestion, entirely* distinct from the wunderstood bargain of the parties, set the contract afloat? I think not.
There is one more view: we may regard the agent as accepting the terms, whatever they were ; but inquiring whether the defendant understood herself as offering to pay interest; and this, with an intention of ascertaining how the bond was to be drawn. In this interpretation of the agent’s letter, the contract must stand.
TJpon the whole, I am of opinion the contract is valid. The defendant has, however, questioned the plaintiff’s title. A reference must be ordered: on the coming in of the report, a final decree will be pronounced.
It is for the present ordered, that the Commissioner do inquire and report whether the plaintiff has, and can convey to the defendant an un-incumbered and perfect title in fee, to the land described in the bill, as the subject of contract; in this reference, the plaintiff to be the actor.
I am inclined to throw the costs on the plaintiff, but shall reserve that question until the coming in of the report.
*116 O’Neall, J.
I agree with the Chancellor, that the defendant is bound to perform her contract of purchase. A contract to sell and buy land, may just as well be made by letters as by any other agreement in writing. The only object of requiring written evidence of such an agreement, is to prevent the possibility of fraud or perjury in setting up loose conversations for contracts; so that the consideration to be paid, the time of payment, and a description of the property to be sold, appear from any written memorandum signed by the party to be charged, sufficiently certain to enable the court to decree a specific performance, it is all that is necessary. The assent of the parties to these essentials, can just as well be gathered from the proposal to buy, and the acceptance, by letters, as if formal acticles were executed between them. In the case of Kennedy v. Lee, 3 Mer. 449, the Lord Chancellor states the rule to be “ that the party seeking the performance of such an agreement, is bound to find in the correspondence, not merely a treaty, still less a proposal for an agreement, but a treaty, with reference to which, mutual consent can be clearly demonstrated, or a proposal met by that sort of acceptance which makes it no longer the act of one party, but of both.” According to this rule, which is fully sustained by the cases of Stratford v. Bosworth, 2 Ves. & Beames, 340: and Huddleston v. Briscoe, 11 Ves. 583; this case was well made out by the letter, of the defendant proposing to buy, and that of the plaintiff’s agent accepting her proposition.
The only question made, is whether the letter of the plaintiff’s agent did not insist on a new or additional term to the proposal of the defendant. I entirely agree with the Chancellor, that such a fact, if it were true, would *be fatal to the complainant’s claim for a specific perform anee. For then there would be no acceptance of the defendant’s proposal on the part of the plaintiff, nor would there be any assent-on the part of the defendant, to the new term. In the language of the Lord Chancellor in Huddleston v. Briscoe, “ the letters would not import a concluded agreement.”
But the proposition of the defendant to buy, is distinctly and in terms accepted, upon the terms which she stated. The agent, in another part of his letter, speaking of the execution of titles, the cash payment, and the security for the payment to be made in January, 1832, in reference to the letter, says “ I presume with interest.” These words were obviously used as his construction of the contract which he had accepted, and which ho supposed the defendant to have intended by her offer. But they are not made a condition on which the acceptance is to depend. It is what in common fairness and in the usual course of such contracts, he supposed the defendant to have intended ; still, however, leaving it perfectly optional to the defendant to admit or deny his construction, without affecting the legal effect of the contract, which he had accepted in such terms, and so unconditionally as to prevent the plaintiff from refusing to comply with it.
In Kennedy v. Lee, the Lord Chancellor says, “I do not mean (because the cases which have been decided would not bear me out in *117 going- so far) that I am to see that both parties really meant the same precise thing, but only that both actually gave their assent to that proposition which, be it what it may, defacto, arises out of the correspondence.” There can be no doubt that both parties in this case, have assented to the proposition, that the defendant should buy the land for §6,000 cash, and §2,000 in January, 1832. The payment of $2,000 in January, 1832, the defendant very probably intended should not bear interest until due; and the plaintiff, that it should bear interest frofn the day on which possession was delivered. This, however, after the proposition of the defendant was accepted by the plaintiff, was a matter of legal *construction of the contract to which they had agreed. They might differ about it, as widely as they pleased ; one of them could not by setting up what she had intended, destroy the contract. The legal effect of it, and the, intention of the parties, were to be gathered from the terms of the defendant’s proposal to buy, which the plaintiff had accepted ; and not from her construction, expressed even at the time, but after she had given her assent to the proposition.
I am hence satisfied, that the defendant was properly held to be bound to comply with the contract of purchase.
On the argument here, it was conceded that the plaintiff’s title was good, and that there was no necessity to refer that matter to the Commissioner. That part of the decree must be therefore reversed.
It is ordered and decreed, that the complainant deliver to the Commissioner, for the defendant, her deed of conveyance of the land to the defendant, produced on the trial | that she do also deliver, or tender forthwith, the possession of the land to the defendant.
It is further ordered and decreed, that the defendant do pay to the complainant the sum of §8,000, with interest on §6,000, from the 5th March, 1831, and on §2,000 from the 1st day of February, 1832 ; and the costs of this case.
Johnson, J., concurred.
Harper, J., absent.